**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| PAUL J. ABROGAST | CIVIL ACTION NO. 05-2076 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TIMEX CORP., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court are two Motions for Summary Judgment [Record Documents 68 and 71], filed on behalf of defendants, Timex Corporation, Liberty Mutual Insurance Company, and Pittards P.L.C. d/b/a Pittards World Class Leather (collectively referred to as "Defendants").  Defendants contend the Louisiana Products Liability Act provides the exclusive theory of liability for Plaintiff, and that Plaintiff is unable to establish two of the essential elements of his claim.  Thus, Defendants seek summary judgment in their favor and dismissal of Plaintiff's Complaint in its entirety.  For the reasons discussed herein, Defendants' Motions for Summary Judgment are **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

## FACTUAL BACKGROUND

On October 31, 2004, Plaintiff Paul J. Abrogast purchased a Timex Expedition digital compass wristwatch, Model 77862, at the Army & Air Force Exchange Service located on Barksdale Air Force Base in Bossier Parish, Louisiana.  Plaintiff wore the watch on his wrist overnight and awoke with a grossly swollen hand and a severe skin reaction along the areas that had been in contact with the watch.  [Record Document 62, ¶ 5].  The watch and/or its component parts contained amounts of hexavalent chromium Cr(VI), a

known carcinogen and dermal irritant that is often present in chromium tanned products.[1] On October 28, 2005, Plaintiff filed suit in Louisiana State District Court against Timex Corporation ("Timex") asserting that his injuries were caused by the acts and omissions of the defendant.   Subsequently, Plaintiff amended his state court petition to add Dicko Industrial Company, Ltd., Liberty Mutual Insurance Company ("Liberty Mutual"), Ptarmigan Trust, and TMX Phillippines, Inc. as additional defendants[2] and further alleged that the hexavalent chromium contained in the Timex watch and/or its component parts is the proximate and legal cause of his injuries.   [Record Document 33].   On January 3, 2008, Plaintiff again amended his complaint, this time removing Ptarmigan Trust as one of the defendants and adding Pittards, P.L.C. as a defendant (a company which had previously been made a third party defendant by Timex).   [Record Document 62].

Defendants Timex and Liberty Mutual move for summary judgment in their favor on the basis that Plaintiff lacks sufficient evidence to prove that the subject watchband is unreasonably dangerous in construction or composition or in design, or that his injuries were proximately caused by a characteristic of the watchband.   [Record Document 69]. Defendant Pittards, P.L.C. ("Pittards") adopts the Motion for Summary Judgment filed by Timex and Liberty Mutual and also asserts that summary judgment should be granted in

---

[1]Chromium tanning is utilized in approximately 80% of the world's leather products including leather garments commonly exposed to direct human skin contact. [Record Document 69, Dr. Nicholas Cory Affidavit].

[2]Plaintiff also named the United States of America as a defendant, but Plaintiff's claims against the Government were dismissed for lack of subject matter jurisdiction. [Record Documents 33 and 50].

its favor because there is no evidence that Pittards manufactured the allegedly defective leather.  [Record Document 71].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant.  Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

**LAW AND ANALYSIS**

**1.     Motion to Strike**

It is well-settled that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence.  Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 191 (5th Cir. 1991), citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 n.19, 90 S.Ct. 1598, 1609 n.19, 26 L.Ed.2d 142 (1970); see also, Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 175-76 (5th Cir. 1990) ("the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial").

In support of his opposition to Timex and Liberty Mutual's Motion for Summary Judgment, Plaintiff submitted various exhibits, including the following documents: (1) unsigned and undated medical report titled "Internal Medicine/Toxicology Consultation"; (2) Affidavit of Russell Gerads, B.S., Vice President, Applied Speciation and Consulting, L.L.C., and a Report from Applied Speciation prepared for Plaintiff's counsel and signed by Russell Gerads; (3) Affidavit of Ernest P. Chiodo, M.D., J.D., M.P.H., M.S., C.I.H., with attached medical report and Curriculum Vitae; and (4) Affidavit of Waldo E. Kallenberger, Ph.D. and Curriculum Vitae.  [Record Document 75].  Defendants seek to have these documents stricken from the record because Plaintiff failed to provide expert disclosures in accordance with this Court's scheduling order and Rule 26 of the Federal Rules of Civil Procedure.   [Record Documents 80 and 81]. Additionally, Defendants argue that the unsigned and undated medical report is not admissible summary judgment evidence, that Russell Gerads, B.S. lacks personal knowledge of the statements asserted in the Affidavit

and Reports from Applied Speciation, and that Plaintiff failed to disclose or provide any information whatsoever with respect to Waldo E. Kallenberger, Ph.D., until Plaintiff filed his Opposition to Summary Judgment on October 14, 2008 (long after the deadlines for expert disclosures had passed).  Id.  The Court will address the admissibility of each of these documents separately.

### A.    Medical Report [Record Document 75-3, p.11-14]

Rule 26 of the Federal Rules of Civil Procedure mandates that a party "disclose to the other parties the identify of any witness it may use at trial to present" expert testimony. Fed. R. Civ. P. 26(a)(2)(a).   This "disclosure must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specifically employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(b).  Furthermore, pursuant to this Court's standard Scheduling Order, a plaintiff is required to provide reports of all treating health care providers.  [Record Document 49].

Defendants' counsel obtained a medical authorization from Plaintiff authorizing a copy service to obtain and copy Plaintiff's medical chart from Dr. Nachman Brautbar's office.[3]   The copy service found the medical report at issue in Plaintiff's chart, and Defendants' counsel received the report on May 12, 2008, approximately two and a half months after Plaintiff's deadline had passed for providing expert reports.[4]  Plaintiff never

---

[3]Dr. Brautbar is a physician, board certified in Internal Medicine, Nephrology, and Forensic Medicine, who purportedly examined Plaintiff's injuries on July 5, 2006 in his capacity as a consulting physician in internal medicine/toxicology.  See Record Document 75-3, p. 1-14.

[4]On August 17, 2007, the Court issued a Scheduling Order requiring Plaintiff to submit reports of treating health care providers immediately, and to provide expert reports no later than February 29, 2008.  [Record Document 49].

disclosed Dr. Brautbar as an expert witness, nor did he provide any medical reports from Dr. Brautbar indicating that he would be called to testify at trial as a treating physician and/or expert witness.  Plaintiff's failure to provide the medical report, either as a treating physician report or expert report, is contrary to Rule 26 and this Court's scheduling order, and this failure alone justifies the striking of this report from the record.

Additionally, Rule 56 of the Federal Rules of Civil Procedure sets out the standards for summary judgment and generally requires that evidence be sworn or certified material for a court to consider it.  Fed. R. Civ. P. 56(e); <u>Stingley v. Den Mar Inc.</u>, 2009 WL 2762374, *3 (5th Cir. Sept. 1, 2009).  Even if the medical report at issue had been disclosed to defendants as required, the report is undated, unsigned, and unsworn, and therefore is not admissible summary judgment evidence.[5]  <u>See</u> <u>Richardson v. Oldham</u>, 811 F.Supp. 1186, 1198 (E.D.Tex. 1992) (excluding unauthenticated medical reports, unauthenticated police records, and unauthenticated photographs) (citing <u>Duplantis</u>, 948 F.2d at 191-92).

---

[5]Plaintiff argues that Rule 26(g)(2) can be read to place an affirmative duty upon all parties to call an omission involving a discovery request to the attention of opposing counsel.  The Court does not believe Rule 26(g)(2) imposes such an affirmative duty. Even assuming *arguendo* that Plaintiff's interpretation is correct, defense counsel would have a duty to call attention to such omissions only with respect to those documents that were actually supplied by the Plaintiff.  Here, Plaintiff never supplied the medical report to defendants nor indicated in any way that Dr. Brautbar would be called to testify at trial.  Thus, defense counsel were under no duty to bring the omission to the attention of Plaintiff's counsel or to otherwise instruct him on the Rules of Civil Procedure and Rules of Evidence, rules which he should already know extensively.

**B.      Affidavit of Russell Gerads, B.S. and Reports of Applied Speciation signed by Russell Gerads [Record Document 75-3, p. 16-32]**

In addition to requiring that summary judgment evidence be sworn or certified, Rule 56(e) specifies that an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e)(1).

The Affidavit of Russell Gerads states that Applied Speciation and Consulting, L.L.C. was retained by Plaintiff's counsel to test the watchband that is the subject of this litigation, and "that the project was assigned to and the subsequent testing of the watchstrap was performed by senior scientist Hakan Gurleyuk, Ph.D." [Record Document 75, Gerads Affidavit].  Nothing in the affidavit or attachments thereto establishes that Russell Gerads personally performed or personally supervised any testing on the watchband or whether he is even qualified to perform such testing.  Thus, it is clear from the face of the Affidavit that Russell Gerads lacks personal knowledge of the testing of the watchband and the results of those tests.  Furthermore, there is no evidence submitted by the Plaintiff that affirmatively demonstrates whether Russell Gerads is competent to testify to such matter.[6]  Although Russell Gerads attempts to establish the expertise of Hakan Gurleyuk, Ph.D. through his affidavit, Dr. Gurleyuk neither signed the reports from Applied Speciation nor executed an Affidavit establishing that he in fact performed the testing and was qualified to do so.  Consequently, the Affidavit of Russell Gerads and the Reports from Applied Speciation must be stricken from the record.

---

[6]Plaintiff claims the motion to strike the affidavit and reports of Russell Gerads is "frivolous."  Yet, Plaintiff's conclusory argument fails to make any assertion regarding the education, training, expertise or other qualifications of Russell Gerads.

**C.      Medical Report from Ernest P. Chiodo, M.D., J.D., M.P.H., M.S., C.I.H. [Record Document 75-3, p.36-40]**

Defendants admit that Plaintiff produced the three-page report signed by Ernest P. Chiodo, M.D., J.D., M.P.H., M.S., C.I.H. prior to the expert disclosure deadline, but claim Plaintiff failed to make any expert disclosures in accordance with Rule 26 and the Court's scheduling order and that it was unknown whether Plaintiff intended to use Dr. Chiodo as an expert witness at trial.  In addition, Defendants contend the test method used by Applied Speciation (and, therefore, the report prepared by Applied Speciation on which Dr. Chiodo's relies to form his opinion) is unreliable and should be excluded.  See Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993) (trial courts are charged with a gate-keeping function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable").

The Court recognizes that Plaintiff and his counsel once again failed to comply with the Federal Rules of Civil Procedure and this Court's Scheduling Order.  However, because Plaintiff did provide Defendants with Dr. Chiodo's three-page report, a report in which he opines to the cause of Plaintiff's injuries, the Court finds that Defendants were aware (prior to the expert disclosure deadline) of Dr. Chiodo's opinions and would not be prejudiced by this Court's consideration of Dr. Chiodo's report.  Also, the Court finds it unnecessary to undertake a Daubert analysis regarding the test methods employed by Applied Speciation and relied on by Dr. Chiodo.  As discussed below, even considering Dr. Chiodo's report, Plaintiff is unable to prove the essential elements of his claim.

### D.      Affidavit of Waldo E. Kallenberger, Ph.D.
[Record Document 75-3, p.62-68]

Lastly, Defendants seek to exclude the Affidavit of Waldo E. Kallenberger, Ph.D., because Plaintiff never provided any material from Dr. Kallenberger prior to filing his opposition to Defendants' motion for summary judgment.    Plaintiff argues Dr. Kallenberger's affidavit was submitted solely to contradict or rebut the same subject matter contained in the affidavit of Dr. Nicholas Cory's, Defendants' expert, and therefore was not required to be disclosed at an earlier date.

Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure allows a party to disclose expert evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party" within 30 days after the other party's disclosure. Pursuant to the Court's Scheduling Order, Defendants were required to submit their expert reports and disclosures by July 30, 2008.  [Record Documents 49 and 67].  Thus, Plaintiff's rebuttal expert reports were due no later than August 29, 2008.  See Fed. R. Civ. P. 26(a)(2)(C).  However, Plaintiff failed to provide any information whatsoever from Dr. Kallenberger until October 14, 2008, when he filed his opposition to the motion for summary judgment.  See Record Document 75.  Had Plaintiff timely disclosed information from Dr. Kallenberger to rebut defendants' expert disclosures, Defendants could have deposed Dr. Kallenberger and discovered the facts and opinions to which he was likely to testify.

Plaintiff argues that striking Dr. Kallenberger's testimony "would frustrate the goals of discovery by placing litigants in the position of having to anticipate the particular approach his adversary's expert will take or the data on which such expert will base his

judgment." [Record Document 88, p.3].  The Court is not convinced.  Plaintiff does not

dispute the fact that Defendants timely provided their expert disclosures on July 14, 2008,

nor does he claim that Dr. Nicholas Cory's affidavit contained new or additional testimony

that what was provided in the expert reports.  See Record Documents 82-2, 82-3.  Plaintiff

was appropriately informed of Dr. Nicholas Cory's opinions prior to the filing of Defendants'

motion for summary judgment and was not placed in the position of having to anticipate

the testimony of Defendants' expert.  Accordingly, the Court finds Plaintiff's failure to timely

disclose Dr. Kallenberger's expert report is contrary to Rule 26 and justifies the striking of

Dr. Kallenberger's affidavit from the record.[7]

## 2.    Motion for Summary Judgment

The Louisiana Products Liability Act "establishes the exclusive theories of liability

for manufacturers for damages caused by their products."  La. R.S. § 9:2800.52; Evans v.

Ford Motor Co., 484 F.3d 329, 334-35 (5th Cir. 2007); Stahl v. Novartis Pharmaceuticals

Corp., 283 F.3d 254, 261-62 (5th Cir. 2002).  A plaintiff may not recover from a

manufacturer for damage caused by a product on the basis of any theory of liability not set

forth in the LPLA.  La. R.S. § 9:2800.52.  Although "the statutory ways of establishing that

a product is unreasonably dangerous are predicated on principles of strict liability,

---

[7]It appears that Plaintiff and his counsel have willfully disregarded the local rules and scheduling orders of this Court throughout the litigation of this matter.  See December 10 and 14, 2010 Orders (wherein the Court recognized the failure of Plaintiff's counsel to comply with Local Rule 7.1W and the Court's Scheduling Order, and ordered Plaintiff's counsel be sanctioned a fine of $250.00).  Furthermore, as this case as been pending for more than four years, Plaintiff has had ample opportunity to conduct discovery, to obtain the necessary expert reports, and provide them to opposing counsel.  Any argument by Plaintiff and his counsel that striking the affidavits and reports of Dr. Brautbar, Russell Gerads, and Dr. Kallenberger would be unfairly prejudicial is frivolous and shall not be considered by this Court.

negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer." Jefferson v. Lead Indus. Ass'n, Inc., 930 F. Supp. 241, 244-45 (E.D. La. 1996).

In order to maintain a successful action under the LPLA, a plaintiff must establish: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damages arose from a reasonably anticipated use of the product by the claimant or someone else.  La. R.S. § 9:2800.54(A).   A plaintiff may prove that the product is "unreasonably dangerous" in construction or composition, in design, because of an inadequate warning, or because it does not conform to an express warranty of the manufacturer about the product.  La. R.S. § 9:2800.54(B) and (D).  "Defects are not presumed to be present by the mere occurrence of an accident."  Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992).  In this matter, Plaintiff alleges the watchband is "unreasonably dangerous" both  in construction and composition and in design.[8]

_____

[8]Defendants concede Plaintiff can establish the first and fourth elements of his cause of action under the LPLA, but contend he cannot establish the second (causation) or third (unreasonably dangerous) elements.  Defendants' argument with respect to the second (causation) element relies heavily on their contention that the expert reports submitted with Plaintiff's opposition should be stricken from the record. However, the Court did not strike Dr. Chiodo's expert report in which he opines that Plaintiff's injuries were in fact caused by "exposure to the materials in the leather band of the Timex wrist watch" and that "this contact dermatitis has continued for approximately 2 and ½ years."  [Record Document 75-3, Dr. Chiodo Report].  The Court finds that Dr. Chiodo's conclusion would be enough to create a genuine issue of material fact sufficient to defeat Defendants' motions for summary judgment. Consequently, the Court need only determine whether there is a genuine issue of

### 1.    Construction or Composition Defect

To prevail on a construction or composition defect claim under Louisiana law, a plaintiff must show that "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."  La. R.S. § 9:2800.55.  In other words, a plaintiff must prove that a product "is defective due to a mistake in the manufacturing process."  Stahl, 283 F.3d at 263 (citing La. R.S. § 9:2800.55).

Defendants contend there is no evidence, which would create a genuine issue of fact for trial, to support Plaintiff's assertion that the Timex watchband in question had a defect in construction or composition.  In support of their motion for summary judgment, Defendants Timex and Liberty Mutual submitted the Affidavit, Curriculum Vitae, and Expert Report of Nicholas Jon Cory, Ph.D.  [Record Document 69, Ex. A].  Dr. Cory attests that hexavalent chromium is often found at low levels in chrome tanned leather, that the chrome tanning process is state of the art and utilized in approximately 80 percent of the world's leather products (including leather garments commonly exposed to direct human contact), and that the levels of hexavalent chromium detected in the subject watchband were minimal—less than three parts per million. [Record Document 69, Ex. A and Record Document 82-3].  In fact, the official test method, ISO17075 IULTCS IUC 18, for detecting hexavalent chromium in tanned leather mandates that products containing hexavalent chromium at such minute levels should be reported as free of hexavalent chromium.

---

material fact as to the third (unreasonably dangerous) element of Plaintiff's claim.

[Record Document 69, Ex. A].  Dr. Cory concluded by stating that the subject watchband "complies with all known regulatory and manufacturing standards and that he is not aware of any publications or findings that human skin contact with tanned leather products containing less than three parts per millions of hexavalent chromium are known to cause or contribute to any adverse human symptoms or skin rashes."  Id.

In opposition, Plaintiff claims independent laboratory analysis has shown that the product deviates from Timex's manufacturing specifications and other regulatory standards.  Plaintiff appears to rely on the Affidavit of Russell Gerads, B.S., the reports from Applied Speciation, and the Affidavit of Dr. Waldo E. Kallenberger.  As discussed above, these exhibits are not properly before the Court and have been stricken from the record.  Nevertheless, even if the Court were to consider these exhibits, Plaintiff cannot establish that the watchband is unreasonably dangerous in construction or composition.  Russell Gerads attests that the level of hexavalent chromium present in the leather and other watchband materials is 665 parts per million.  See Record Document 73-3, p.16-17.  Relying on the test results from Applied Speciation, Dr. Kallenberger opines that the hexavalent chromium content of the watchband "materially deviates from the expected manufacturing specifications of Timex and/or the applicable industrial and regulatory standards for leather goods." See Record Documents 73-3, p.62-65. Yet, Dr. Kallenberger (as well as Plaintiff's other experts) fails to state what the applicable industrial and regulatory standards are, what the manufacturing specifications of Timex are, what he expects the manufacturing specifications of Timex to be, or whether the watchband actually deviates from the manufacturing specifications of Timex. See id.  The conclusory affidavits of Plaintiff's experts are simply insufficient to demonstrate the existence of a genuine issue

of material fact as to whether the watchband is unreasonably dangerous in construction or composition.  See Grenier v. Med. Engineering Corp., 99 F.Supp.2d 759, 764 (W.D.La. 2000), aff'd 243 F.3d 200 (wherein the district court dismissed the plaintiff's claim for a construction defect because plaintiffs failed to submit any evidence indicating what the manufacturer's standards were or whether the product deviated from those standards). Consequently, the Court finds "there has been a 'complete failure of proof concerning an essential element'" of Plaintiff's case.  Stahl, 283 F.3d at 263 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2458, 91 L.Ed.2d 265 (1986)).

### 2.     Design Defect

To establish a design defect under the LPLA, a plaintiff must show that at the time the product left the manufacturer's control, (1) "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage," and (2) "[t]he likelihood that the products design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product."  La. R.S. § 9:2800.56.

Defendants also contend there is no evidence, which would create a genuine issue of fact for trial, to support Plaintiff's assertion that the Timex watchband in question had a defect in design because Plaintiff failed to show the existence of any alternative design. In opposition, Plaintiff points to the affidavit of Dr. Kallenberger to support his claim that the subject watchband is unreasonably dangerous in design.  Once again, the Court has determined that Dr. Kallenberger's affidavit was not properly disclosed and is, therefore, not admissible summary judgment evidence.   Nonetheless, even considering Dr.

Kallenberger's affidavit, Plaintiff cannot demonstrate the watchband is unreasonably dangerous in design.

In his affidavit, Dr. Kallenberger succinctly states "that alternative tanning processes presently exist that are formulated to reduce or prevent the presence of hexavalent chromium in chrome-tanned leather."  [Record Documents 73-3, p.64].  However, Dr. Kallenberger fails to state what the alleged alternative tanning processes may be, that such alternative tanning processes existed at the time the allegedly defective watchband left the manufacturer's control, whether such alternative tanning processes would adversely effect the utility of the product, the burden that would be imposed on Timex to adopt such alternative tanning processes, or whether such alternative tanning processes would reduce the likelihood of plaintiff's injuries.  The record is completely devoid of any evidence demonstrating the existence of a genuine issue of material fact as to whether the subject watchband is unreasonably dangerous in design.  See e.g., Gauzier v. Dodge, 1998 WL 227170, * 5 (E.D.La. 1998) (wherein the plaintiff failed to offer any technical evidence to support her conclusory assertion that an alternative design existed).

In a final effort to salvage his claim, Plaintiff avers that the evidentiary doctrine of *res ipsa loquitur* is available in an LPLA action and that the facts of this case lead "to an inference that the negligence of the defendant is the probable cause of the accident." [Record Document 75, p.7].  However, Plaintiff has cited no authority, and research reveals none, for imposing liability under the LPLA on the basis of a single injury purportedly caused by a product that has been used by thousands of people without similarly reported injuries.  Guilbeau v. W.W. Henry Co., 85 F.3d 1149, 1169 (5th Cir. 1996) (internal citations omitted).  Moreover, the Louisiana State Supreme Court has emphasized that the doctrine

of *res ipsa loquitur* is to be used "sparingly" in products liability cases, and "only when the plaintiff has excluded other 'reasonable explanations' for an accident." Lawson v. Mitsubishi Motor Sales of America, Inc., 938 So.2d 35, 45 (La. 2006); see also, Spurlock v. Cosmair, Inc., 509 So.2d 826, 829 (La.App. 1 Cir. 1987) (*res ipsa loquitur* inapplicable where a "conclusion could reasonably be drawn that plaintiff's scalp irritation and hair loss were due to an unusual sensitivity or allergy on her part"); Booker v. Revlon Realistic Professional Products, Inc., 433 So.2d 407, 410 (La.App. 4 Cir. 1983) (an unusual or rare idiosyncratic sensitivity on plaintiff's part does not provide a basis for recovery); Rhodes v. Max Factor, Inc., 264 So.2d 263, 266 (La.App. 4th Cir.1972) (*res ipsa loquitur* inapplicable where there was a reasonable possibility that the plaintiff's scalp irritation and hair loss may have resulted from a rare idiosyncratic sensitivity to the lotion rather than a vice or defect in the product); Blalock v. Westwood Pharmaceuticals, Inc., 1990 WL 10557, *2 (E.D.La.1990) (a product is not defective if the plaintiff's injuries result from a rare or idiosyncratic reaction, nor is the manufacturer obligated to warn against possibility of such a reaction).

The Court agrees with Defendants that, not only is there a possibility of a rare idiosyncratic sensitivity to the watchband by Plaintiff, but there are numerous alternative explanations for his injury which do not lead to the conclusion that the injury was caused by an unreasonably dangerous condition in the watchband. In fact, Plaintiff's own treating physicians opined that his contact dermatitis was most likely caused by other sources. See Record Document 68, Dr. Bryan Dep., p. 17, 61 (Dr. Bryan testified that plaintiff's contact dermatitis was most likely allergic as opposed to irritant, and that she could not relate the rash condition to wearing the watchband one and a half years earlier for approximately

twelve hours); Record Document 68, Dr. Futrell Dep., p. 10, 33 (Dr. Futrell testified there are many possible causes for an irritant contact dermatitis and suggested that the rash may have been caused by a foreign substance such as a soap, nickel, latex or "almost anything" getting underneath the watchband); Record Document 71, Dr. Arnold Affidavit, ¶ 8 (After reviewing Plaintiff's medical records and reference materials, Dr. Arnold determined there is no convincing evidence to support the conclusion that hexavalent chromium was the causative agent of Plaintiff's contact dermatitis.  In addition, Dr. Arnold opined that Plaintiff's condition would have likely resolved within a few weeks had Plaintiff not continually exacerbated the condition by scratching the area.).  Therefore, the Court rejects Plaintiff's argument and declines to apply the evidentiary doctrine of *res ipsa loquitur* to the facts of this case.

## CONCLUSION

The Court finds that Plaintiff lacks any evidence demonstrating the existence of a genuine issue of material fact as to whether the Timex watchband is "unreasonably dangerous" as provided in the LPLA.  Accordingly, Defendants' motions for summary judgment are **GRANTED** and Plaintiff's claims shall be **DISMISSED WITH PREJUDICE.**

A judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 12th day of January, 2010.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE